## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| HOME PRO CONSTRUCTION CO., INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-11-4440 |
| | § | |
| HOELSCHER WEATHERSTRIP | § | |
| MANUFACTURING CO., INC., | § | |
| | § | |
| *Defendant*. | § | |

### ORDER

Pending before the court are (1) a motion for summary judgment filed by defendant/counterplaintiff Hoelscher Weatherstrip Manufacturing Co., Inc. ("Hoelscher") (Dkt. 41); (2) a motion to strike an affidavit and other materials attached to Hoelscher's motion for summary judgment filed by plaintiff/counterdefendant Home Pro Construction Co, Inc., d/b/a Door Masters of Texas ("Door Masters") (Dkt. 52); (3) a motion to exclude the testimony of plaintiff's expert filed by Hoelscher (Dkt. 42); (4) a motion to exclude defendant's expert filed by Door Masters (Dkt. 45); and (5) a motion for a separate trial on exemplary damages filed by Hoelscher (Dkt. 43). Having considered the motions, related documents in the record, and applicable law, the court is of the opinion that the motion for summary judgment (Dkt. 41) should be GRANTED IN PART AND DENIED IN PART, the motion to strike the affidavit and other materials (Dkt. 52) should be GRANTED, the motion to exclude the testimony of plaintiff's expert (Dkt. 42) should be DENIED, the motion to exclude the testimony of defendant's expert (Dkt. 45) should be GRANTED IN PART AND DENIED IN PART, and the motion for a separate trial on exemplary damages (Dkt. 43) should be DENIED.

# I. Background

This case relates to a copyright issued by the United States Copyright Office for the drawing of a door threshold known as the Self-Draining Threshold Part No. 129 (the "129 Threshold"). Dkt. 41, Ex. 16 (copyright certificate).  Hoelscher obtained a copyright of the drawing of the 129 Threshold as a "technical drawing" on June 23, 2011, though the original drawing was completed either in 1969, 1970, or 1994.  *Id.* (stating that the "year of completion" for the technical drawing is 1994); Dkt. 41 (arguing that the original drawing of the 129 Threshold was approved by Henry Hoelscher on September 24, 1969); Dkt. 53 (noting that Derek Hoelscher stated during his deposition that the earliest drawing of any threshold in the possession of Hoelscher was drawn in 1970).

It is undisputed that Door Masters, which is a business that sells and installs doors for homeowners, purchased its door thresholds from Hoelscher until 2007 or 2008.  Dkts. 41, 53.  Door Masters claims that it received complaints from its customers about air and debris blowing into its customers' houses through the holes that Hoelscher placed in the thresholds to make them self-draining.  Dkt. 53.  Door Masters asserts that it requested that Hoelscher sell it thresholds without the holes, and Hoelscher asserts that it complied with the modification when asked.  Dkt. 53, 56.  Door Masters contends that it never received any thresholds without holes.  Dkt. 53.  In 2007, Door Masters contacted Non-Ferrous, a company known as an "extruder,"[1] to have its own thresholds manufactured.  Dkt. 53.  Non-Ferrous was Hoelscher's extruder.  Dkt. 41.

---

[1]  An extruder of a door threshold prepares a technical drawing, makes a die (heavy steel mold), and extrudes aluminum through the die to manufacture the threshold.  Dkt. 53.

Hoelscher argues that Non-Ferrous CAD operators had access to the technical drawing for the 129 Threshold and that Door Masters' owner, Charles MacDonald, told the CAD operator he wanted a threshold that looked the same as the 129 Threshold.  *Id.*  Door Masters states that MacDonald met with a sales representative named Tonya Cost, reviewed stock thresholds from the Non-Ferrous catalog, including stock threshold numbers 1162 and 7018, and discussed the features that Door Masters wanted on its threshold. Dkt. 53.  MacDonald allegedly told Cost that he had been using the Hoelscher threshold but was unhappy with it.  *Id.*  Cost does not even recall MacDonald mentioning the Hoelscher threshold.  *Id.*; Dkt. 53-12 at 24 (Cost Dep.).  Door Masters asserts that MacDonald also met with CAD operator Ricardo Lopez, Jr., about designing a new threshold and that Macdonald did not mention the Hoelscher threshold during this meeting.  Dkt. 53. A few days later MacDonald received a drawing of a threshold from Lopez.  *Id.*  Lopez testified that no customer had access to the drawings on his computer or to the dies that belonged to other customers.  Dkt. 53-11 at 62-63.  Lopez also testified that he never compared thresholds from different dies and he never compared drawings from different door thresholds.  *Id.* at 36-38.  Cost also confirmed that MacDonald was not given access to any Hoelscher drawings, which would have been against Non-Ferrous policy.  Dkt 53-12 at 78-79.  Non-Ferrous began manufacturing the threshold for Door Masters.  Dkt. 41.

Notwithstanding Door Masters's and Non-Ferrous's assertions that Door Masters's threshold was designed without referring to the drawing or die of the 129 Threshold, Hoelscher asserts that the drawing for Door Masters's threshold is virtually identical to the drawing of the 129 Threshold as there are at least 20 identical dimensions. Dkt. 41.  In 2011, Hoelscher learned that Door Masters was selling a door threshold that it considered to be substantially similar to the 129 Threshold.  *Id.*

3

Hoelscher thereafter sought copyright registration of the drawing.  *Id.*  The original applications to the Copyright Office were submitted as "2-d artwork," but the Copyright Office would not approve the copyright unless this was changed to "technical drawing."  Dkt. 53-6.  The Copyright Office approved the copyright on the 129 Threshold June 23, 2011.[2]  Dkt. 41, Ex. 16.  Hoelscher then sent a cease an desist letter to both Door Masters and Non-Ferrous demanding that they stop manufacturing, marketing, and selling the Door Masters's threshold, which they claimed clearly infringed on their copyright registrations.  Dkt. 41, Ex. 17.  Non-Ferrous agreed to the request.  Dkt. 53-12 at 24-25 (Cost Dep.).  Hoelscher also sent letters to other extruders informing them that Hoelscher had the exclusive right to manufacture, market, and sell the door thresholds identified in the copyright registrations.  Dkt. 53-8 at 120-25; *see, e.g.*, Ex. 53-9, Ex. 30 (example of letter sent to a manufacturer other than Non-Ferrous).

On December 16, 2011, Door Masters filed its complaint against Hoelscher, seeking a declaratory judgment that Hoelscher's copyright of the drawing of the 129 Threshold is invalid or that Door Masters's products do not infringe on the copyright.  Dkt. 1.  The original complaint also contains claims for tortious interference with contract, defamation, and unfair competition.  *Id.*  Door Masters amended its complaint on December 19, 2011; the amended complaint contains the same causes of action and adds a claim for tortious interference with advantageous and prospective business relationships.  Dkt. 3.  Hoelscher filed a counterclaim for (1) copyright infringement; (2) unfair competition/false advertising; (3) implied passing off/reverse passing off; (4) tortious interference with existing contracts; (5) tortious interference with prospective relations; (6)

---

[2]  Hoelscher obtained copyrights of several other threshold drawings on the same day: part numbers 28, 529, 729, H-100, and HP-100.  Dkt. 41, Ex. 17.

4

conversion; and (7) money had and received.  Dkt. 7.  Hoelscher also asserts a claim under the Texas

Theft Liability Act, seeks an accounting from Door Masters to determine the extend of proceeds it

received for the sale of Hoelscher's copyright design, and requests a temporary injunction and a

permanent injunction.  *Id.*

Hoelscher has moved for summary judgement in its favor on all of Door Masters's claims

and on Hoelscher's infringement claim.  Dkt. 41.  Hoelscher has also moved to exclude the

testimony of T. June Melton, who is an expert for Door Masters that opines that the 129 Threshold

is not original, that the threshold is a useful article, and that Door Masters's threshold is not

substantially similar to Hoelscher's.  Dkt. 42.  Hoelscher also filed a motion for a separate trial on

exemplary damages.  Dkt. 43.  Door Masters opposes all of these motions and additionally moves

to exclude the expert witness testimony of Derek Hoelscher, who opines, among other things, that

Henry Hoelscher created the design of the 129 Threshold and that Door Masters told Non-Ferrous

that he wanted the same threshold as Hoelscher.  Dkt. 45.  Door Masters has also filed a motion to

strike Derek Hoelscher's affidavit and other materials attached to Hoelscher's motion for summary

judgment.  Dkt. 52.

## II. MOTIONS TO EXCLUDE EXPERT TESTIMONY

### A.    Legal Standard

The Supreme Court of the United States acknowledged in *Daubert v. Merrell Dow*

*Pharmaceuticals* that Federal Rule of Evidence 702 serves as the proper standard for determining

the admissibility of expert testimony.  *Daubert v. Merrell Dow Pharms*., 509 U.S. 579, 597–98, 113

S. Ct. 2786 (1993).  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Under *Daubert*, a trial court acts as "gatekeeper," making a "preliminary assessment of whether the reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93; *Kumho Tire v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167 (1999); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (5th Cir.2002). *Daubert* and its principles apply to both scientific and non-scientific expert testimony. *Kumho Tire*, 526 U.S. at 147. Experts need not be highly qualified to testify, and differences in expertise go to the weight of the testimony, rather than admissibility. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). Nonetheless, courts need not admit testimony that is based purely on the *ipse dixit* of the expert. *Gen. Elec. Co. v. Joinder*, 522 U.S. 136, 146, 118 S. Ct. 512 (1997); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

In addition to being qualified, an expert's methodology for developing the basis of his or her opinion must be reliable. *Daubert*, 509 U.S. at 592–93; *Moore*, 151 F.3d at 276. Even if the expert is qualified and the basis of her opinion reliable, the underlying methodology must have also been correctly applied to the case's particular facts in order for her testimony to be relevant. *Daubert*, 509 U.S. at 593; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible. *See* Fed. R. Evid. 104(a); *Moore*, 151 F.3d at 276.

The proponent does not have to demonstrate that the testimony is correct, only that the expert is qualified and that the testimony is relevant and reliable. *Moore*, 151 F.3d at 276.

**B.    Door Masters's Expert**

Door Masters designated T. June Melton as an expert. Dkt. 42. Melton is a licensed professional engineer with a B.S. and an M.S. in architectural engineering from the University of Texas at Austin. Dkt. 55 (Melton Report). He has 42 years of experience as a licensed engineer specializing in structural, civil, and architectural engineering. *Id.* He has specialized experience in the design, construction, installation, inspection, and evaluation of building components including doors, door frames, and thresholds. *Id.* Melton opines that (1) the 129 Threshold is not original; (2) the 129 Threshold is a utilitarian object, not an artistic object; and (3) Door Masters's threshold is not virtually identical or substantially similar to the 129 Threshold. *Id.* Hoelscher contends that Melton's opinions are not based on any valid methodology, are not reliable, or are irrelevant, as Melton does not properly apply the facts of the case and ignores undisputed facts. Dkt. 42.

First, Hoelscher contends that Melton's conclusion that the threshold design is not original is unreliable. *Id.* "Original," as used with regard to copyrights,

> means only that the work was independently created by the author . . . and that it possesses at least some minimal degree of creativity. . . . To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. . . . Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying.

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345, 111 S. Ct. 1282 (1991). Melton concludes that the 129 Threshold is not original because it is "very similar to metal thresholds designed and manufactured over a half-century ago." Dkt. 42, Ex. 1 at 7. Hoelscher argues that this

opinion is unreliable because Melton completely failed to determine if the design contained "at least some minimal degree of creativity" and failed to consider whether it was independently created. Dkt. 42. The court finds that this contention goes to the weight of the evidence, not its admissibility.

Hoelscher next complains that Melton's determination that the 129 Threshold is a "useful item" is not reliable. Dkt. 42. First, Hoelscher points out that Melton does not use the term "useful article" in his report. *Id.* Next, Hoelscher states that Melton did not rely on the Copyright Act's definitions and failed to focus on whether the design incorporated features that could be identified separately from the utilitarian aspects of the article. *Id.* Again, these are issues that go to the weight of the evidence, not its admissibility.

Finally, Hoelscher contends that Melton's opinions about the 129 Threshold being a useful or utilitarian item is in direct conflict with copyright law, which allows a technical drawing to be copyrighted, because Melton relies on the fact that the drawing is a technical drawing and not an artistic drawing. Dkt. 42. The fact that the drawing is a technical drawing is just one aspect of Melton's analysis as to whether the artistic and utilitarian aspects of the threshold can be separated. *See* Dkt. 55. Melton opines that the threshold is utilitarian, not artistic. *Id.* The court does not believe that Melton's mention that the drawing is technical rather than artistic renders his opinion about the utilitarian and artistic aspects of the threshold unreliable.

Hoelscher also argues that Melton's methodology concerning substantial similarity is unreliable. Dkt. 42. Melton concludes that the Door Masters threshold is not substantially similar to the 129 Threshold because the two thresholds do not have the same dimensions or weight and because Door Masters's threshold is of higher quality as it lacks weep holes and wood rot. Dkt. 42, app. 1. Hoelscher contends that under applicable law Melton should compare the overall similarities,

8

not the differences, in the designs.  Dkt. 42 at 8 (citing *Johnson v. Jones*, 921 F. Supp. 1573, 1583 (E.D. Mich. 1996), *aff'd in relevant part*, 149 F.3d 494 (6th Cir. 1998)).

Under applicable law, substantial similarity is determined by an "ordinary observer" standard. *See Peel & Co., Inc. v. Rug Mkt.,* 238 F.3d 391, 395 (5th Cir. 2001).  "It is entirely immaterial that, in many respects, plaintiff's and defendant's works are dissimilar, if in other respects, similarity as to a substantial element of plaintiff's work can be shown."  4 Neville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.03[B][1][*a*] (Matthew Bender, rev. ed.. 2013).  "The admission of evidence of differences as between plaintiff's and defendant's works is not, however, improper." *Id.*  The court finds that Melton's opinions about the similarity or differences in the two thresholds is admissible.  Any issues relating to the way Melton compared the thresholds goes to the weight of his testimony and not its admissibility.

In sum, the court finds that all of Hoelscher's concerns go to the weight of Melton's testimony, not its admissibility.  Door Masters has shown that Melton is qualified and that his testimony is relevant and reliable.  Accordingly, Hoelscher's motion to exclude Melton's testimony (Dkt. 42) is DENIED.

## C.  Hoelscher's Expert

Hoelscher presents its president Derek Hoelscher as an expert.  Dkt. 45, Ex. A (Hoelscher Report).  Derek Hoelscher's report addresses the factors relating to the validity of Hoelscher's copyrights, including originality and utility of the threshold designs, Door Masters's design, and how Door Masters's design allegedly infringes the copyright of the drawing of the 129 Threshold, and damages.  *Id.*  Door Masters asserts that Hoelscher has only identified Derek Hoelscher as an expert in an attempt to introduce inadmissible hearsay testimony in the guise of expert testimony.  Dkt. 45.

9

Door Masters moves to exclude the expert testimony of Derek Hoelscher because he is unqualified and his opinions are unreliable.  *Id.*  Door Masters additionally asserts that Derek Hoelscher's report should be excluded because it is contrary to his deposition testimony.[3]  Dkt. 45.  Hoelscher contends that Door Masters's objections go to the weight and not the admissibility of Derek Hoelscher's testimony.  Dkt. 50.

      **1.**      **Qualification**

"As long as some reasonable indication of qualification is adduced, the court may admit the evidence without abdicating its gate-keeping function.  After that, qualifications become an issue for the trier of fact rather than for the court in its gate-keeping capacity."  *Rushing v. Kan. City S. Ry.*, 185 F.3d 496, 506 (5th Cir. 1999), *superceded by statute on other grounds as recognized in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002).

Door Masters contends that Derek Hoelscher is not qualified to be an expert as (1) his degree is in business management, not in an engineering field; (2) he did not take any engineering courses while at college; (3) he has never authored an article; and (4) he has never served as an expert. Dkt. 45.  Hoelscher contends that Derek Hoelscher is qualified because he has worked full-time for Hoelscher since 1985 and became part-owner in 1993.  Dkt. 50.  He has worked in the industry for years and knows how thresholds are designed, manufactured, and sold.  *Id.*  He also knows the history of the company and has studied the history of thresholds.  *Id.*

---

[3]  Door Masters also contends that the format of the report gives rise to a strong presumption that the report was written by Hoelscher's attorneys rather that Derek Hoelscher.  *Id.*  Derek Hoelscher was free to copy Hoelscher's counsel's formatting style, so the similar formatting does not lead to a presumption that Hoelscher's attorney wrote the report.

The court finds that Derek Hoelscher's experience in the door threshold industry provides a reasonable indication of qualification.  In his report, Derek Hoelscher states that he worked part-time for Hoelscher as a teenager and through college, graduated from Rice University in 1985, and has been employed full-time at Hoelscher since his graduation.  Dkt. 45, Ex. A.  Derek Hoelscher claims he has "experience in the design, fabrication, installation, inspection and evaluation of residential and commercial doors, door frames, thresholds, and other miscellaneous door hardware, as well as sales, cost, industry history and industry practices related to them." *Id.*  This experience is sufficient for him to be qualified to testify as an expert.  The concerns expressed by Door Masters go to the weight of Derek Hoelscher's testimony, not its admissibility.  Door Masters's motion to exclude Derek Hoelscher's testimony because Derek Hoelscher is unqualified is DENIED.

### 2.    Reliability

Door Masters also argues that Derek Hoelscher's opinions are unreliable because they are contradicted by his deposition testimony.  Dkt. 45.  For example, Derek Hoelscher opines that the first technical drawing of 129 Threshold was drawn by Albritton Engineering Corp. and approved by Henry Hoelscher on September 24, 1969, yet during his deposition Derek Hoelscher testified that the earliest drawing was drawn by the May Company in 1970.  *Id.*  Hoelscher points out that the 1969 drawing was produced during discovery and Door Masters did not question Derek Hoelscher about it during the deposition.  Dkt. 50.  Hoelscher argues that regardless of the date of the drawing—1969 or 1970—both drawings indicate that Henry Hoelscher designed the threshold, which is the substance of Derek Hoelscher's opinion.  *Id.*

The court has examined Door Masters's claims of inconsistencies and does not believe that they are fatal to Derek Hoelscher's opinions.  Rather, any differences in the report and testimony or

omissions in the testimony may be explored at trial.  They go to the weight of the testimony, not its admissibility.  Thus, Door Masters's motion to exclude Derek Hoelscher's testimony as unreliable or because it contradicts his deposition testimony is DENIED.

**3.      Hearsay**

Door Masters asserts that Hoelscher is offering Derek Hoelscher as an expert in an attempt to get otherwise inadmissible hearsay admitted.  Dkt. 45.  Specifically, Door Masters complains that Derek Hoelscher's opinions that MacDonald told Non-Ferrous that he wanted the same threshold as Hoelscher and that Hoelscher's father designed the threshold when Derek Hoelscher was a toddler are inadmissible hearsay and should not be permitted simply because Derek Hoelscher is being offered as an expert.  *Id.*  Door Masters argues that these hearsay arguments have nothing to do with Derek Hoelscher's qualifications as an expert as inadmissible hearsay does not become admissible simply because it is offered by an expert.  Dkt. 50.

An expert may rely on materials that are hearsay to form the basis of his opinion, but only the expert's opinion, not the hearsay evidence or report, is admitted into evidence.  *See* Fed. R. Evid. 702, 703; *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 727-29 (6th Cir. 1994).  As far as the drawings being prepared by Derek Hoelscher's father, Hoelscher contends Derek Hoelscher determined that the threshold was designed by his father because the face of the 1969 drawings indicate that they were "Hoelscher's."  Dkt. 50; *see* Dkt. 53, Exs. 4-5.  Thus, Derek Hoelscher does not appear to have even relied on hearsay to form his opinion about the source of these drawings.  As to the testimony about what MacDonald allegedly told Non-Ferrous, this has to do with the facts of this case and is not expert testimony.  Thus, since it is clearly hearsay, it will not be permitted.

Door Masters's motion to exclude Hoelscher's testimony because of inadmissible hearsay is GRANTED IN PART AND DENIED IN PART.  Derek Hoelscher's opinions about what

MacDonald told Non-Ferrous are clearly not expert opinions and are hearsay.  The court will not permit Derek Hoelscher to testify about what other witnesses in this case said simply because he is a door threshold expert.  Derek Hoelscher may, however, testify about the meaning of the name "Hoelscher" on the 1969 drawings, as he has experience in reading these drawings that would be helpful to the jury.

### III.  MOTION TO STRIKE AFFIDAVIT AND OTHER EXHIBITS

Door Masters moves to strike the affidavit of Derek Hoelscher submitted by Hoelscher as summary judgment evidence, arguing that contains inadmissible hearsay, beliefs, and opinions. Dkt. 52.  Door Masters objects specifically to paragraphs 7–8, 13–14, 17–23, and 25–27 of Derek Hoelscher's affidavit.  *Id.*  Door Masters also moves to strike deposition testimony contained on pages 49 through 50 of Tonya Cost's deposition, arguing that this portion of the Cost Deposition contains inadmissible hearsay.  *Id.*  Hoelscher did not file a response to the motion.  Under Local Rule 7.4, a motion to which a party does not respond is considered unopposed.  S.D. Tex. L.R. 7.4. Door Master's motion to strike (Dkt. 52) is therefore GRANTED.

### IV.  MOTION FOR SUMMARY JUDGMENT

Hoelscher asserts it is entitled to summary judgment on all of Door Masters' state law claims because Door Masters does not have any damages other than the time and expense of prosecuting this lawsuit, which are not recoverable damages.  Dkt. 41.  Hoelscher also asserts that it is entitled to summary judgment on Door Masters's copyright claims because the copyright of the drawing of the 129 Threshold is valid and Door Masters copied the design drawing.  *Id.*

Door Masters argues that Hoelscher is not entitled to summary judgment on the state law claims because it has compensable damages in the form of lost profits.  Dkt. 53.  As far as the copyright claims,  Door Masters argues that (1) there is no admissible evidence that the drawing of

the threshold is original; (2) regardless, the threshold is a "useful article" and not copyrightable; and (3) even if it were copyrightable, Hoelscher could not recover statutory damages or attorneys' fees under the Copyright Act for Door Masters's alleged infringement because the alleged infringement started before the drawing was copyrighted.  *Id.*  Door Masters did not file a cross motion for summary judgment.

## A.    State Law Claims

Hoelscher argues that all of Door Masters's state law claims fail because they require damages, and MacDonald testified that the only damages Door Masters has are attorneys' fees and lost profits from MacDonald spending time working on the lawsuit, neither of which are recoverable. Dkt. 41.  Door Masters argues that MacDonald testified that Door Masters had $130,000 in lost profits for just one year.  Dkt. 53.  Hoelscher points out, however, that MacDonald testified that (1) notwithstanding this lawsuit, Door Masters is still selling its thresholds and still has about 150 in stock; and (2) Door Masters could have hired an extruder other than Non-Ferrous to make its threshold.  Dkt. 56.  Moreover, Hoelscher asserts that Door Masters does not have any calculations to back up its lost profits figure.  *Id.* (citing Dkt. 56, Ex. B at 146).

The court agrees that Door Masters has not demonstrated that there is an issue of material fact with regard to recoverable damages.  Three of the four tort claims asserted by Door Masters—tortious interference with contracts, tortious interference with prospective relations, and unfair competition—require proof of actual or economic damages.  *See Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 674-76 (S.D. Tex. 2010) (setting forth the elements of tortious interference with contract, tortious interference with prospective relations, and unfair competition). Door Masters asserts that there is a question of fact with regard to damages because it has attorneys' fees and because MacDonald asserts that Hoelscher's actions caused Door Masters to lose profits.

14

First, "[a]ttorney's fees are not normally recoverable as actual damages" unless the claim is for legal malpractice or a party is bringing or defending an action against a third party to protect its interests due to the defendant's torts. *RAS Grp., Inc. v. Rent-a-Center E., Inc.*, 335 S.W.3d 630, 641 (Tex. App.—Dallas 2010, no pet.). Neither exception applies here. Thus, the attorneys' fees do not weigh into the analysis of whether Door Masters has shown there is an issue of material fact with regard to the damages element of its tort claims.

Second, Door Masters has not shown that there is an issue of material fact with regard to recoverable lost profits. During his deposition, MacDonald testified as follows:

> Q: . . . What other factors led to the lost profits your company sustained –
> A:      Other than the fact of my time being gone.
> Q:      No. Other than the fact that you chose to spend time with your lawyers?
> A:      None.
> Q:      Nothing else?
> . . .
> Q:      What other factors contributed to the $130,000 in lost profits you allege are sustained by your company other than your decision to spend time with your lawyer?
> A:      None.
> Q:      There's nothing else, no business issues come up, no nothing else at all?
> A:      No.

Dkt. 53, Ex. 5 at 141.[4] This is a clear statement, reiterated more than once, that Door Masters only lost profits because MacDonald spent time working on this case rather than working at Door Masters. Under Texas law, "expenses incurred in prosecuting or defending a suit are not recoverable

---

[4] The court notes that Door Masters cites testimony on pages 139 and 142 of MacDonald's deposition in which MacDonald allegedly states that the $130,000 in lost profits was because Hoelscher tortiously interfered with Door Masters's supplier. Dkt. 53 at 3 n.1. However, Door Masters does not provide these pages of the deposition transcript. Regardless, this statement does not refute the other testimony, as the mere fact that MacDonald believed Hoelscher tortiously interfered with his supplier does not necessarily mean that Door Masters lost profits for any reason other than MacDonald spending time with Door Masters's attorney.

as costs or damages unless recovery of those items is expressly provided for by statute, is available under equitable principles, . . . or is expressly provided by contract." *Shenandoah Assocs. v. J&K Props., Inc.*, 741 S.W.2d 470, 486 (Tex. App.—Dallas 1987, writ denied) (citations omitted); *see Beasley v. Peters*, 870 S.W.2d 191, 196 (Tex. App.—Amarillo 1994, no writ) ("[I]t is settled that time lost is an expense of litigation for which recovery is not allowed."); *Phillips v. Latham*, 523 S.W.2d 19, 27 (Tex. Civ. App.—Dallas 1975, writ ref'd n.r.e.) (finding that an individual may not recover actual damages for time lost because of the pendency of his or her lawsuit); *c.f. Comm. for Idaho's High Desert, Inc. v. Yost,* 92 F.3d 814 (9th Cir. 1996) ("No authority suggests that a plaintiff's time spent in litigation over trademark infringement is compensable as damages for the infringement."). Here, Door Masters has pointed the court to no authority indicating that it may recover for the profits it allegedly lost from the time MacDonald spent working with his counsel on prosecuting this lawsuit.

Moreover, the evidence indicates that Door Masters has not otherwise suffered an economic loss at this point. MacDonald clearly testified that Door Masters has 150 single thresholds left and 75 or 80 double thresholds left and is still selling doors with these thresholds. Dkt. 56, Ex. B at 23-24. Door Masters, however, is concerned about what will happen when it runs out of stock. Door Masters asserts that Non-Ferrous will no longer manufacture the Door Masters's threshold due to Hoelscher's tortious actions and that even though Door Masters can get thresholds from other companies that are similar to the 129 Threshold, Non-Ferrous is the only extruder in the Houston area, and it has a short lead time and better pricing for smaller companies such as Door Masters. Dkt. 53 at 15 n.11 (citing Dkt. 53, Ex. 12 at 56-57) (discussion regarding Non-Ferrous); Dkt. 56, Ex. B at 24 (discussion regarding being able to purchase thresholds from other companies). While the court understands Door Masters's concern, Door Masters has provided nothing more than conclusory

statements about possible future damage, which is not enough to raise a question of material fact as to whether it has damages recoverable in tort for its state law claims.  Hoelscher's motion for summary judgment on the tortious interference and unfair competition claims is GRANTED.

The only other state claim is a defamation claim.  Hoelscher asserts that the defamation claim fails for two reasons: (1) because Door Masters cannot identify anyone who received any false information that caused it harm; and (2) because a defamation claim is essentially a business disparagement claim and that an essential element of business disparagement is economic damages, which Door Masters does not have.  Dkt. 41.  Door Masters does not disagree with Hoelscher's characterization of the defamation claim as a business disparagement claim, but Door Masters contends that Hoelscher sent disparaging letters to Don File and other extruders falsely alleging that Door Masters had infringed upon fraudulently obtained copyrights and fraudulently misrepresented that Hoelscher had the exclusive right to manufacture, market, and sell the thresholds.  Dkt. 53.  Door Masters also contends that Hoelscher induced Non-Ferrous not to deal with Door Masters, resulting in direct pecuniary loss to Door Masters.  *Id.*

Under Texas law, the elements of business disparagement are "(1) the defendant published false and disparaging information about [the plaintiff], (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff."  *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003).  To establish "special damages," a plaintiff must show it has it has "'pecuniary loss that has been realized or liquidated as in the case of specific lost sales.'"  *Harlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 767 (Tex. 1987) (quoting W. Keeton, *Prosser and Keeton on the Law of Torts*, § 128 at 971 (5th ed. 1984)).

During MacDonald's deposition, Hoelscher's counsel asked MacDonald about the alleged defamation/disparagement:

> Q: So can you identify anybody specifically that you believe has been the recipient of a communication which has been false and caused you harm?
>
> A: Not at this time.
>
> Q: And since defamation does people, talk about disparagement now. Has your company, Door Masters, been disparaged?
>
> A: I believe so.
>
> Q: Tell me how they've been disparaged.
>
> A: I believe our reputation is damaged.
>
> Q: And what is that belief based upon?
>
> A: My feelings.
>
> Q: Well, that's great, but let me ask this: Have you spoken to or communicated with anybody who has told you that they believe your company has been the subject of discussions or written communications which were false which ultimately resulted in harm to you?
>
> A: Not that I know of at this time.

Dkt. 41, Ex. 1 at 134-35.  Thus, MacDonald is unable to pinpoint any actual harm from the alleged disparaging statements.  Door Masters has not provided any evidence that it suffered special damages.  Hoelscher's motion for summary judgment as to the defamation claim is therefore GRANTED.

## B.    Copyright Claims

Door Masters claims that Hoelscher's copyright is invalid, and Hoelscher claims that it has a valid copyright and that Door Masters infringed on the copyright.  Dkt. 41.  Hoelscher asserts it is entitled to summary judgment on both claims.  *Id.*

### 1.    Legal Standard

In order to prove copyright infringement, the copyright owner must prove ownership of a valid copyright and copying by the alleged infringer.  *Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 47 (5th Cir. 1995).  Registration of a copyright is prima facie evidence of the copyright's validity.  *Id.*  "Ownership of a valid copyright is established by proving the originality and copyrightability of the material and compliance with the statutory formalities."  *Id.*  "Originality"

18

"means only that the work was independently created by the author . . . and that is possesses at least some minimal degree of creativity." *Id.* "Copying is generally established by proving that the defendant had access to the copyright material and that there is a substantial similarity between the two works." *Id.*

## 2.    Validity of Copyright

Because the 129 Threshold copyright is registered, it is presumed to be a valid copyright. However, Door Masters has presented enough evidence to rebut that presumption and create an issue of material fact for trial.   Door Masters contends that the copyright of the drawing of the 129 Threshold is invalid because the threshold is a "useful article" and not entitled to copyright protection.   Hoelscher argues that the 129 Threshold contains a combination of features that results in a unique design not found elsewhere in the threshold business.   Dkt. 41.

Under 17 U.S.C. § 102(5), copyright protection extends to "pictorial, graphic and sculptural works."   These works include "technical drawings" pursuant to 17 U.S.C. § 101, but the design of a "useful article" can only be a protectable "technical drawing" if the "design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article."   17 U.S.C. § 101.   A "useful article" is "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information."   *Id.*

Hoelscher relies on *Galiano v. Harrah's Operating Co.*, 416 F.3d 411 (5th Cir. 2005), for its assertion that the 129 Threshold is not merely a useful article and that the design is copyrightable. In *Galiano*, the Fifth Circuit used a two-step analysis to determine if a uniform or costume design was entitled to copyright protection.   First, the court asked whether the costume was a "useful article."   *Galiano*, 416 F.3d at 416.   Then, the court asked whether the "'design incorporates

[pictorial, graphic, or sculptural] features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.'" *Id.* (quoting 17 U.S.C. § 101). The court noted that the second question, whether the artistic and usefulness of an item are conceptually separable, is generally the difficult question, and there are at least six variations of the conceptual separability test. *Id.* at 417. The court extensively discussed a Seventh Circuit opinion, *Pivot Point International, Inc. v. Charlene Products, Inc.*, 372 F.2d 913 (7th Cir. 2004) (en banc), which set forth an approach for determining separability that Hoelscher would like the court to apply—the "process-oriented" approach. *See Galiano*, 416 F.3d at 417; *Pivot Point*, 372 F.2d at 920-30. Under this approach, if "artistic discretion dominates practical necessity as the driving force behind design choices, a useful article may nonetheless qualify for protection as a [pictorial, graphic, or sculptural] work." *Id.* at 418. The Fifth Circuit acknowledged the comprehensiveness of the *Pivot Point* opinion, but declined to apply it to the *Galiano* facts. *Id.* Instead, the court applied a test for conceptual separability suggested in *Nimmer on Copyright*: "'[C]onceptual separability exists where there is substantial likelihood that even if the article had no utilitarian use it would still be marketable to some significant segment of the community simply because of its aesthetic qualities.'" *Id.* at 419 (quoting 1 *Nimmer on Copyright* § 2.08[B][3], at 2-101). The Fifth Circuit noted that this "likelihood-of-marketability standard" for garment design only. *Id.* at 421.

There is thus not a clear standard in the Fifth Circuit for determining separability in cases like this one. *Cf. Spectrum Creations, L.P. v. Carolyn Kinder Int'l, LLC*, No. SA-05-CV-750-XR, 2008 WL 416264, at *87-89 (W.D. Tex. Feb. 13, 2008) (discussing whether the artistic aspects of portable and fixed wire lighting designs were separable from their utilitarian functions and noting that "the Fifth Circuit has not clarified the applicable standard for cases such as this one"). Nevertheless, the statute itself provides enough guidance to clarify that there is a question of fact as to separability in

this case.  Under the statute, the pictorial, graphic, or sculptural features must be "identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." Here, while Hoelscher asserts that there are lines and such on the 129 Threshold that may not be utilitarian, the court will leave it to the jury to determine whether these are artistic aspects that are capable of existing independently from the utilitarian aspects of the design.  Thus, Hoelscher's motion for summary judgment on the copyright issue is DENIED because there is a question of fact as to whether the 129 Threshold is a useful item.

### 2.    Originality

Even if it were clear that the artistic and useful aspects of the threshold were separable, there is a question of fact as to whether the design is original.  Hoelscher argues that the design for the 129 Threshold is original because is was created by Henry Hoelscher in 1969 and possesses at least a minimal degree of creativity.  Dkt. 41.  Derek Hoelscher testified that the 129 Threshold was unique because it has grooves on the inside and outside of the threshold and a ball on the inside lip of the threshold and because of the shape of the outside lip and the drain pan.  Dkt. 41, Ex. 2 at 136-49 (Derek Hoelscher Dep.).  Additionally, Hoelscher asserts that even if the 129 Threshold is similar to other thresholds, its combination of features makes it unique.  Dkt. 41..  Derek Hoelscher testified that this unique design could not be found in any of the threshold literature.  Dkt. 41, Ex. 2 at 172.

Door Masters asserts that Hoelscher's claim that the 129 Threshold is original is contrary to evidence demonstrating that the earliest drawings approved by Henry Hoelscher were not his original designs but were stock thresholds from the May Company.  Dkt. 53.  Door Masters also points out that Derek Hoelscher, who was a toddler in 1969, has no way of knowing that Henry Hoelscher designed the 129 Threshold.  *Id.*  Moreover, Door Masters points out that Derek Hoelscher's assertion that his father designed the 129 Threshold in 1969 conflicts with his deposition testimony

that the earliest drawing of the threshold was drawn by the May Company in 1970.  *Id.*  Hoelscher claims that May Aluminum was an independent contractor and extruder.  Dkt. 41 at 7 n.1.  The experts for the parties simply disagree about whether the 129 Threshold is original.  The court finds that there is a question of fact as to whether the designs were original.

### 3.      Copying

There is also a question of fact as to whether Door Masters copied the drawing of the 129 Threshold.  Hoelscher asserts that it has proven that Door Masters copied the design because it had an opportunity to copy it and the Door Masters's threshold is substantially similar to the 129 Threshold.  Dkt. 41.  Hoelscher also contends that the evidence shows Door Masters intended to copy the 129 Threshold.  *Id.*  Door Masters contends that it did not have access to Hoelscher's drawings and that any reference to any evidence regarding Door Masters wanting the same threshold as Hoelscher's is hearsay.  Dkt. 53.  Moreover, Non-Ferrous would not permit copying of the designs and did not give Door Masters the images.  *Id.*  Hoelscher argues that Door Masters's contention that it did not have access to Hoelscher's threshold is disingenuous because MacDonald purchased over 2,000 thresholds from Hoelscher, was very familiar with the product, and wanted to make the product better.  Dkt. 56.  The parties' experts disagree as to whether the 129 Threshold and the Door Masters's design are substantially similar.  Whether Door Masters copied the 129 Threshold is clearly a question best resolved by the jury.

In sum, there are numerous questions of fact with regard to the copyright claims.  Hoelscher's motion for summary judgment on the copyright claims is therefore DENIED.

### V. MOTION FOR SEPARATE TRIAL

Hoelscher moves for a separate trial on exemplary damages, arguing that evidence of Hoelscher's net worth, which is relevant only to exemplary damages, would prejudice Hoelscher

during the jury's calculation of actual damages should the jury determine that Hoelscher is liable. Dkt. 43.  Hoelscher proposes that the same jury return to hear evidence relating to punitive damages only if it finds liability.   Dkt. 57.   Door Masters is opposed to a bifurcated trial, arguing that bifurcation is not routinely ordered and that the court may cure any prejudicial effect or confusion on the part of the jury with appropriate instructions.  Dkt. 51.  The court agrees with Door Masters and finds that bifurcation is not necessary in this case.  Hoelscher's motion for a separate trial (Dkt. 43) is DENIED.

## VI. CONCLUSION

Hoelscher's motion for summary judgment (Dkt. 41) is GRANTED IN PART AND DENIED IN PART.  It is GRANTED with regard to Door Masters's state-law tort claims, which are hereby DISMISSED WITH PREJUDICE.  It is otherwise DENIED.  Door Masters's motion to strike Derek Hoelscher's affidavit and other materials (Dkt. 52) is GRANTED.  Paragraphs 7–8, 13–14, 17–23, and 25–27 of Derek Hoelscher's affidavit and the hearsay testimony on pages 49 through 50 of Tonya Cost's deposition are hereby STRICKEN.  Hoelscher's motion the exclude the testimony of Door Masters's expert (Dkt. 42) is DENIED.  Door Masters's motion to exclude the testimony of Hoelscher's expert (Dkt. 45) is GRANTED IN PART AND DENIED IN PART, as described above. Hoelscher's motion for a separate trial on exemplary damages (Dkt. 43) is DENIED.

It is so ORDERED.

Signed at Houston, Texas on December 10, 2013.

_____
Gray H. Miller
United States District Judge

23